IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

CYNTHIA A. HAWLEY,

                Plaintiff,

v.                                      CIVIL ACTION NO.   3:19-0759

HOSPICE OF HUNTINGTON, INC.,
a West Virginia corporation,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Hospice of Huntington's Motion for Summary Judgment (ECF No. 45). Plaintiff Cynthia Hawley filed a Response in Opposition (ECF No. 47) to which Defendant replied (ECF No. 49). Plaintiff also filed a sur-reply at the direction of the Court (ECF No. 61). For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Defendant, Hospice of Huntington ("HOH"), hired Plaintiff as a staff nurse in 2008 and promoted her to Director of Emogene Dolin Jones Hospice House (a branch of HOH) about seven years later. Around June 21, 2018, a staff member told Plaintiff that one of the nurses was illegally diverting drugs from the medicine room. Plaintiff reviewed video surveillance of the medication room to substantiate the allegations and reported the incident to HOH management. Plaintiff was surprised to learn that HOH management already knew about the allegations but was informed that the management was investigating.

On or around July 2, 2018, Plaintiff submitted a written request (her second) to transfer to a staff nurse position. She wanted to transfer because she believed her role was being diminished and she was unhappy with the way that HOH was handling the drug diversion allegations. Around that same time, Plaintiff filed a complaint with the West Virginia Office of Health Facility License & Certification ("OHFLAC Complaint") because she believed that Defendant was not investigating the reports properly.

From July 9 to 11, 2018, OHFLAC representatives investigated the Complaint and interviewed HOH staff, including Plaintiff. On July 14, 2018, OHFLAC notified HOH that it substantiated the Complaint, stating that HOH violated a policy that requires it to investigate and attempt to resolve a complaint within three business days. OHFLAC found that HOH was alerted to the drug diversion on June 11, 2018 but failed to do anything other than requesting video surveillance on June 30, 2018. OHFLAC directed HOH to take corrective measures.

Plaintiff received her first notice of disciplinary action ("First Notice") two days later. It was Plaintiff's first discipline during her ten-year employment with HOH. Plaintiff contested the verbal warning, which alleged that she allowed her staff to mishandle medication and break the chain of custody. The next day, Plaintiff sent a text message to her staff stating that she was stepping down as Director and was seeking a staff nurse position.

On July 25, 2018, Plaintiff changed course and sent an email to Defendant rescinding her transfer request and expressing her desire to stay on as Director. But around this time, Defendant was developing a new position to replace Plaintiff's Director position. Defendant also hired an outside firm to investigate Plaintiff's performance as Director. During this investigation, the firm interviewed members of Plaintiff's staff, who indicated that Plaintiff was a poor Director, acted unprofessionally, and was not trustworthy.

After learning about the investigation, Plaintiff filed a grievance detailing her knowledge and response to the drug diversion and her belief that she was being retaliated against for her participation in OHFLAC's investigation.

On August 17, 2018, HOH President and CEO Melanie Hall emailed Plaintiff: "On Monday, (8/20), please start your workday by coming directly to the 6th Ave. office. We will meet there." Ex. H to Def.'s Mot. At the meeting, Plaintiff received another Notice of Disciplinary Action ("Final Notice"), which stated that Plaintiff was being disciplined for violations of the "Harassment in the Workplace Policy," among other "failures in leadership." Ex. 7 to Pl.'s Resp., ECF No. 47-7. Under the "Plan for Improvement" section, the Notice reads: "As a result of [your] failures in leadership, you are being offered a staff nurse position in the home care program," a position that would decrease her pay from $39.78 to $31.50 per hour (an hourly difference of $8.28) and require her to start travelling. *Id*.

Four days later, Plaintiff sent an email to Defendant rejecting the staff nurse position and expressing her desire to remain Director. Plaintiff further stated that she believed that she was being retaliated against for filing the OHFLAC Complaint. Hall responded that she was interpreting her rejection of the staff nurse position as a voluntary resignation and that Plaintiff's email was the first time she heard that Plaintiff filed the OHFLAC Complaint. Plaintiff rejected the characterization that she resigned or otherwise ended her employment voluntarily.

Plaintiff filed suit, asserting two causes of action: (1) violation of the Patient Safety Act (W. Va. Code § 16-39-1, *et seq*.); and (2) retaliatory discharge in violation of public policy. Both causes of action rely on the same premise that Plaintiff was wrongfully retaliated against due to her actions in response to the drug diversion.

Defendant's brief in support of the Motion for Summary Judgment raises one argument: that Plaintiff's claims fail because Defendant did not terminate, constructively discharge, or take adverse action against Plaintiff. Plaintiff's response argues that these issues must be decided by a jury due to various disputes of material fact. In reply, Defendant improperly raised several arguments for the first time, including the assertion that HOH had a legitimate non-retaliatory reason for the demotion. Defendant also asserted that Plaintiff's WVPSA claim supersedes her retaliatory discharge claim under *Harless v. First Nat'l Bank in Fairmont*, 246 S.E.2d 270, 275 (W. Va. 1992). The Court permitted Plaintiff to file a sur-reply to respond to these new arguments. The motion is now ripe for review.

## II. LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)-(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248. A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013).

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322-23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). However, the nonmoving party must offer some "concrete evidence from which a

reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. If the nonmoving party makes this showing, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

### III. ANALYSIS

#### A. Retaliatory Discharge under *Harless*

In *Harless*, the Supreme Court of Appeals of West Virginia recognized a cause of action for wrongful discharge when "the employer's motivation for the discharge contravenes some substantial public policy principle." *Id*. However, as this Court has previously held, *Harless*-based claims are only appropriate "when no other private cause of action could enforce the public policy at issue." *Adkins v. Cellco P'ship, Inc.*, No. CV 3:17-2772, 2017 WL 2961377, at *4 (S.D. W. Va. July 11, 2017). It is well established in West Virginia that a "[p]laintiff cannot state a plausible claim for wrongful discharge in violation of public policy when the WVHRA and WVPSA applies to Defendant and covers the same factual conduct." *Daniel v. Raleigh Gen. Hosptial, LLC*, No. 5:17-CV-03986, 2018 WL 3650248, at *10 (S.D. W. Va. Aug. 1, 2018) (Berger, J.) (quoting *Adkins*, 2017 WL 2961377, at 3; then *Collins v. Lowe's Home Centers*, LLC, No. CV 3:17-1902, 2017 WL 6061980, at *3 (S.D. W. Va. Dec. 7, 2017)) (internal quotations and brackets omitted).

Plaintiff asserts a *Harless* claim and a WVPSA claim, both premised on the same violation of public policy promoted in the WVPSA. Specifically, Plaintiff alleges that her *Harless* claim arises from Defendant's retaliation against her for making "good faith reports of instances of wrongdoing and/or waste, for advocating on behalf of a patient or patients with respect to the care, services, or conditions provided by defendant." Compl. at ¶ 53. This language is copied and pasted from the WVPSA. *See* W. Va. Code § 16-39-4(a).

Plaintiff claims that the Court should allow her *Harless* claim to proceed because it is broader than her WVPSA claim. According to Plaintiff, her allegations that HOH retaliated against

her for "raising safety concerns" internally can be raised under *Harless* but not the WVPSA. This interpretation ignores the text of the WVPSA, which prohibits retaliation for making a good faith report "*to the health care entity* or appropriate authority an instance of wrongdoing or waste." W. Va. Code § 16-39-4(a) (emphasis added). The Court finds that Plaintiff's WVPSA claim supersedes her *Harless* claim and dismisses Count II.

### B. Patient Safety Act

Defendant next moves for summary judgment as to Plaintiff's WVPSA claim. As noted above, the WVPSA prohibits retaliation against a health care worker for:

> (1) Mak[ing]a good faith report, or is about to report, verbally or in writing, to the health care entity or appropriate authority an instance of wrongdoing or waste; or
>
> (2) Advocat[ing] on behalf of a patient or patients with respect to the care, services or conditions of a health care entity.

W. Va. Code § 16-39-4(a).

Although the West Virginia Supreme Court has provided little guidance on the elements of a WVPSA claim, "it has clearly adopted a method of analyzing claims of retaliation or discrimination under the *McDonnel Douglas* burden-shifting framework." *Daniel*, 2018 WL 3650248 (citing *Conaway v. E. Associated Coal Corp.*, 358 S.E.2d 423, 429-30 (W. Va. 1986)) (internal quotations omitted). Accordingly, courts have applied *McDonnel Douglas* and its progeny to claims brought under the WVPSA and similar statutes. *See id.*

Under the *McDonnel Douglas* burden-shifting framework, a plaintiff must first present evidence establishing a prima facie case of retaliation. *Id.* This evidentiary burden is *de minimis*. *Nestor v. Bruce Hardwood Floors, L.P.*, 558 S.E.2d 691, 694 (W. Va. 2001) (quoting *Hanlon v. Chambers*, 464 S.E.2d 741 (W. Va. 1995)). Once the plaintiff has made a prima facie case, "[t]he employer must then articulate a legitimate, non-discriminatory reason for the adverse employment

action." *Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152, 160 (W. Va. 1995). Finally, if the employer offers evidence establishing a non-retaliatory reason, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's offered reasons are pretextual.

*Prima Facie Case of Retaliation*

Plaintiff has presented sufficient evidence to establish a prima facie case for retaliation under the WVPSA. It is undisputed that Plaintiff was a healthcare worker, that she submitted the OHFLAC Complaint, and that the Complaint was later substantiated. It is also undisputed that Plaintiff reported the drug diversion internally and that she filed a grievance detailing her belief that she was being retaliated against for her cooperation with OHFLAC. Soon after, Defendant investigated, disciplined, and attempted to demote Plaintiff to a non-managerial position that paid over $8.00 less per hour. Based on these facts, Plaintiff makes a plausible claim that she was retaliated against for her good-faith reports.

Defendant argues that Plaintiff has failed to make prima facie showing on two grounds. First, HOH argues that there was no adverse action taken against Plaintiff because she refused to accept a position that she previously requested. Defendant goes so far as to state that "Plaintiff wanted the job!" Def.'s Reply 2. This argument is unavailing. Defendant ignores the evidence that Plaintiff did not request a home care nurse position (which would have required her to start travelling) and that she rescinded her transfer request before Defendant removed her as Director. A reasonable jury could find that Plaintiff did not want the job if she never requested it and rejected the subsequent offer.

This argument is also not grounded in the legal standard. The WVPSA defines "retaliation" as including any "adverse change in a health care worker's position, location, compensation,

benefits, privileges or terms or conditions of employment that occurs as a result of a health care worker engaging in any action protected by this article." W. Va. Code § 16-39-3(4). As noted above, Defendant sought to change Plaintiff's position, compensation, and responsibilities. This fits squarely within the WVPSA's text.

Defendant's position is further refuted by Fourth Circuit and West Virginia Supreme Court precedent. The Fourth Circuit has held that a reassignment may constitute an adverse action if that reassignment "had some significant detrimental effect." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) (citing *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir.1999)). "Significant detrimental effect" may be established by evidence of a "decrease in compensation, job title, level of responsibility, or opportunity for promotion . . . ." *Boone*, 178 F.3d at 256-57; *see also Taylor v. Virginia Dep't of Corrs.*, 177 F.Supp.2d 497, 504-05 (E.D. Va. 2001). Although West Virginia Supreme Court has not considered this question directly, it has also suggested that demotions constitute adverse employment actions for the purposes of the establishing a prima facie case of discrimination under the West Virginia Human Rights Act. *See Ford Motor Credit Co. v. W. Virginia Human Rights Comm'n*, 696 S.E.2d 282, 293 (W. Va. 2010). Accordingly, a reasonable jury could conclude that Defendant took adverse action against Plaintiff.

Second, Defendant argues that Plaintiff failed to establish causation because HOH management did not know that Plaintiff authored the OHFLAC Complaint. However, Hall stated during a deposition that although she did not *know* who wrote the OHFLAC Complaint, she suspected that it was Plaintiff. A jury could also infer that Hall deduced that it was Plaintiff: out of the two people who reported the incident, Plaintiff was more likely to be the complainant because she was more familiar with the HOH's investigation—the basis for the OHFLAC Complaint. Moreover, even if HOH did not know that Plaintiff was the complainant, Plaintiff also

-8-

asserts that she was retaliated against for her internal reports. Given this evidence, the Court finds

that Plaintiff has met her burden of establishing a prima facie case of retaliation.

*Legitimate Reason for Adverse Action*

Defendant next asserts that it had a legitimate, non-discriminatory reason for demoting

Plaintiff. According to the Final Notice demoting Plaintiff, Defendant's investigation of Plaintiff's

performance produced troubling findings. The investigation revealed that Plaintiff's staff did not

trust Plaintiff enough to report instances of wrongdoing to her. They also described "multiple

instances of unprofessionalism" and violations of HOH harassment policy, including yelling at

staff members, calling the administration "snakes in the grass," and acting aggressively. Defendant

proffers several statements from Plaintiff's staff members to support these allegations. If true, these

allegations would be a legitimate reason for demoting Plaintiff.

*Showing of Pretext*

The *McDonnel Douglas* framework next requires Plaintiff to show by a preponderance of

the evidence that Defendant's stated reason is pretextual to avoid dismissal. But what constitutes

pretext? Federal courts applying *McDonnel Douglas* have held that the employer's reasons are

pretextual if they are "unworthy of credence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S.

133, 143 (2000); *see also Williams v. Staples, Inc.*, 372 F.3d 662, 669 (4th Cir. 2004). Similarly,

the West Virginia Supreme Court has described pretext as "direct or circumstantial evidence of

falsity or discrimination." *Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152, 160 (W. Va. 1995)

(citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981)).

In *Daniels* (the only decision on a motion for summary judgment against a WVPSA claim

this Court can find), the plaintiff claimed that she was retaliated against after she made several

-9-

good-faith reports about patient safety.[1] However, Judge Berger held that the plaintiff failed to produce sufficient evidence that the hospital's reasons for her termination were pretextual beyond mere speculation.

Here, Plaintiff supplies more than speculation. First, the timing of events supports an inference of retaliatory motive and pretext. Plaintiff's first disciplinary action occurred only two days after OHFLAC informed Defendant that it substantiated Plaintiff's Complaint. Around this same time, HOH started investigating Plaintiff's performance and eliminating her position. Plaintiff was removed as Director a little over a month later. Based on the temporal proximity of these events, a reasonable jury could infer that HOH's investigation and related findings were tinged with retaliatory animus.

This inference is further supported by the fact that Plaintiff was neither given the opportunity to respond to the allegations, nor the opportunity to correct her behavior through progressive discipline. Despite having a clear record for nearly a decade, HOH initiated an investigation into Plaintiff's performance after OHFLAC substantiated Plaintiff's Complaint, issued one verbal warning (the basis of which is contested), and removed her as Director weeks later without any steps in between. A reasonable jury could find that that this contradicted HOH's progressive discipline policy. A reasonable jury could also infer that failing to give Plaintiff an opportunity to respond indicates that the investigation was not credible.

Although these facts can be interpreted differently, the Court must adopt the interpretation most favorable to Plaintiff. As such, the Court finds that Plaintiff has presented sufficient evidence to rebut Defendant's stated reasons and submit the dispute to a jury.

---

[1] The court in *Balderson v. Lincare Inc.*, No. 2:19-CV-00666, 2020 WL 6051266, at *4 (S.D. W. Va. Oct. 13, 2020) also granted summary judgment of a WVPSA claim, but in that case, the plaintiff conceded that the claims should be dismissed.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** the

Motion and **DISMISSES** Count II.

The Clerk is **DIRECTED** to send a copy of this Opinion to counsel of record and any

unrepresented parties.

ENTER:        February 11, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE